No. 22-1266

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

EMILY BOSCOE CHUNG,
Plaintiff-Appellee
&

KAREN A. HAMMER,
Ratifying Non-Party-Appellee
v.

TIMOTHY J. LAMB,
Respondent-Appellee
&

TIMOTHY J. LAMB, P.C.,
Respondent-Appellee

On Appeal from the United States District Court for the District of Colorado
Civil Action No. 1:14-CV-03244-DDD-KLM

Hon. Daniel D. Domenico (Wiley Y. Daniel, deceased)
Magistrate Judge Kristen L. Mix

**APPELLANTS' OPENING BRIEF (citing Appendix)**

**ORAL ARGUMENT REQUESTED**

KAREN A. HAMMER
Hammer-Law
4845 Pearl East Circle
Suite 101
Boulder, CO 80301
Phone: (303) 204-4447
Fax: Scan and email
hammer@hammer-law.com
*Attorney for Emily Boscoe Chung and Self*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ......................................................... II

**ATTACHMENTS** ............................................................. VI

Initial-Renewed-Section-1927-Fees-Award [#344] (App'ts-App-0138-et-seq.) ....................................................vi

Vacate-Remand-Order [#350] (App'ts-App-0212-et-seq.)].........vi

2ⁿᵈ-Renewed-Section-1927-Fee-Award [#360] (App'ts-App-0346 et seq.) ....................................................vi

**GLOSSARY, USAGE, AND CONVENTIONS** ............................. VII

**INTRODUCTION** .................................................11

**JURISDICTIONAL STATEMENT** ...........................................12

**ISSUES PRESENTED FOR REVIEW**.........................................13

**STATEMENT OF THE CASE**...............................................14

**A.   NATURE OF THE CASE - FACTUAL BACKGROUND** ......................14

1.   Defendants Embrace Their Lying to Courts.................... 14

a.   Lies to D-CT and this Court..........................................15

b.   Defendants Admit that They Assume Lies to COURTS Don't Count. .32

2.   No Current D-CT Order Fully Evaluating Section-1927-Conduct ..................................................... 37

3.   Section-1927-Fees for Hammer's Seeking to Strike Defendants' Real-Party-In-Interest Defense from their Answer 40

4.   Section-1927-Fees for Hammer's "Object[ion] to Mr. Lamb's motion to disqualify her as an attorney for Ms. Boscoe, arguing that this would prejudice Ms. Boscoe by denying her right to counsel of choice." (Dk. 308, p. 16). .................................... 45

5.   Section-1927-Fees for Hammer's "resist[ing] producing the Engagement Letter on the grounds of relevance and attorney-client privilege even though she knew the letter was relevant to the identity of the real party in interest and she did not have an attorney-client relationship with Ms. Boscoe pursuant to the Engagement Letter." (Dk. 308, p. 16). .................................. 49

6.   Section-1927-Fees for Hammer's "delay[ing] Mr. Lamb's counsel's attempts to depose Ms. Boscoe." (Dk. 308, p. 16). .... 55

**SUMMARY OF ARGUMENTS** .............................................. **58**

**I.   GENERALIZED STANDARDS OF REVIEW** ........................ 60

**II.   ARGUMENT** ............................................................... **61**

**A.   D-CT MISINTERPRETED THE LEGAL EFFECT OF THIS COURT'S VACATING [#350] THE PRIOR SECTION-1927-FEES ORDER [#344]** ................................................................. **61**

1.   ALTERNATIVE 1 on SANCTIONABLE CONDUCT: Reaffirm Sanctionable Conduct by Incorporating [#344] by Reference. . 63

a.   The Fee Award for Motion-to-Strike-Answer Filings Was Based on a Broader Scope of Sanctionable Conduct than Was Briefed by the Parties (and Did Not Properly Apply Section-1927 Standards). ........................... 64

b.   The Motion-to-Disqualify Fees Awarded Relied on a Broader Scope of Sanctionable Conduct than the Parties Briefed (and Did Not Properly Apply Section-1927 Standards). .......................................... 68

NOTE: The Remaining Categories of Fees Are Addressed Later in this Brief. ............................................................ 71

2.   ALTERNATIVE 2 on SANCTIONABLE CONDUCT: D-CT's Failure to Redetermine Sanctionable Conduct Fatal to Section-1927-Fees-Award. ............................................................. 71

**B.   REGARDLESS, D-CT'S CALCULATION OF SECTION-1927-FEES WAS REVERSIBLE AS CLEAR ERROR ON THIS RECORD. ............................ 72**

1.   The Fee Award for Discovery Fees Was Arbitrary and Capricious (Not Conforming to Section-1927 Standards)......... 73

2.   The Fee Award for Discovery Fees Was Arbitrary and Capricious Because It Did Not Conform to Section-1927 Standard. ............................................................... 77

**C.   D-CT'S STRIKING HAMMER'S SURREPLY [#356] WAS AN ABUSE OF DISCRETION. ................................................................ 82**

**CONCLUSION ................................................................ 83**

**STATEMENT REGARDING FEES ............................................ 83**

**STATEMENT CONCERNING ORAL ARGUMENT....................... 83**

**CERTIFICATE OF SERVICE ............................................... 84**

**CERTIFICATE RE TYPE-VOLUME LIMITATION ..................... 84**

**1st CERTIFICATE OF COMPLIANCE WITH ECF USER MANUAL..............85**

**INDEX OF KEY ORDERS & FILINGS....................................... 87**

## Cases

*Butler v. Biocore,* 348 F.3d 1163, 1169 (10th Cir. 2003) ........................................... 61

Estate of Coward v. Nicklos Drilling, 505 U.S. 469, 476 (1992) ................................ 60

*Steinert v. Winn Group,* 440 F.3d 1214, 1221 (10th Cir. 2006) ................................ 60

*Stevens v. CoreLogic,* 899 F.3d 666, 677 (9th Cir., 2018) ........................................ 60

## Statutes

28 U.S.C. § 1291 .......................................................................................................... 12

FDCPA ........................................................ viii, 11, 12, 15, 23, 50, 52, 55, 61, 71, 74, 75, 77

## Other Authorities

David Marcus, When Rules are Rules (May 25, 2011), Utah Law Review ................................ 60

## Rules

App. Rule 4(a)(1) ......................................................................................................... 12

Rule-11 ........................................................................................................................ 29

## ATTACHMENTS

This appeal has a series of intertwining orders, most of which are in the Appendix for the prior appeal 20-1278, which are incorporated here by reference.  The precise order triggering this appeal is listed below, together with the final judgment:

> Initial-Renewed-Section-1927-Fees-Award  [#344] (App'ts-App-0138-et-seq.)
> Vacate-Remand-Order  [#350] (App'ts-App-0212-et-seq.)]
> 2ⁿᵈ-Renewed-Section-1927-Fee-Award  [#360] (App'ts-App-0346 et seq.)

## STATEMENT OF RELATED CASES

Prior Appeals: Nos. 18-1479, 19-1056, 20-1278

# GLOSSARY, USAGE, AND CONVENTIONS

## Glossary

**[#00]** Square bracketed numbers refer to documents assigned the referenced docket number in Boscoe-II. *E.g.,* [#308] refers to the final judgment assigned district court docket number 308 in Boscoe-II.

**<v00>** Pointed bracketed numbers with a "v" number refer to the volume number of Appellants Appendix.

**-0**    Numbers without brackets that follow a dash refer to the internal page number of that document as initially filed.

**_0**    Numbers without brackets that follow an underscore refer to the Bates number of the document within Appellants' Appendix (number continuously between all volumes).

**1st**    First

**2nd**    Second

**At-App**  Appellants' Appendix. When citing to a transcript that is part of the At-App, the first page cited is to the Appendix page, while the transcript page (four of which appear together on one page of the Appendix) is immediately followed in brackets. The line number(s) are placed after a colon immediately following the internal transcript page. *E.g., At-App* at 00012(4:2-3) would signify page twelve of the At-App, more specifically page four of the transcript contained therein, on lines 2-3.

**Agreement**  The agreement between Consumer and Hammer for pursuing Boscoe-II and resolving Boscoe-I debt owed Hammer.

**App-Rule** The Fed.R.App.P.

**Boscoe**  Named Plaintiff/Appellant was sued by Vantium and Lambs in Boscoe-I under the name "Emily Boscoe" (her name by birth) for pre-marital debt, even though she had already changed her name to "Emily Boscoe Chung." The latter name was used for accuracy in Boscoe-II when she served as the named Plaintiff. To minimize confusion, Plaintiff/Appellant is referred to primarily as Consumer, with occasional references to her as Boscoe, Plaintiff, or Appellant.

**Boscoe-I**   The state court consumer debt collection case brought against Consumer under her maiden name on pre-marital debt, the collection of which involved the FDCPA violations which are the claims in Boscoe-II.

**Boscoe-II**  The district court case from which orders are being appealed.

**Consumer**  Plaintiff-Appellant Emily Boscoe Chung, whose maiden name is "Boscoe" and whose relative is an attorney who referred Boscoe-I to Hammer

**D-Ct**  The district court in Boscoe-II

***E.g.*** This phrase is intended to mean in the context of this appeal, "by way merely of example and without limitation or waiver."

**FDCPA** Fair Debt Collection Practices Act, 15 U.S.C. §1602 *et seq.*

**For example** *See, "e.g.," supra.* All examples or references to incomplete sets ("including"), by definition, indicate that the reference is made without waiver, in whole or in part.

**Hammer** Appellant Karen A. Hammer, who served as counsel of record for Plaintiff-Appellant in Boscoe-I and as an unnamed real party in interest, also served as defense counsel in Boscoe-I.  This Brief frequently refers to "Hammer" instead of Plaintiff/Appellant Boscoe because this

Court and D-CT have repeatedly followed that convention. *E.g., [#350] n. 2* (App'ts-App-0213).

**Including** All references to incomplete sets ("including"), by definition, indicate that the reference is made without waiver, in whole or in part, regardless of whether the word "including" is followed by the phrases "without limitation," "without waiver," or some combination thereof.

***Inter alia*** *See, "e.g.," supra.*

**J-Domenico** District Court Judge Daniel D. Domenico, presiding over Boscoe-II

**Local-Rule** D.C.COLO.L.CɪᴠR

**Opening-Brief** Unless otherwise explicitly stated, this term refers to the *amended* opening brief filed here.

**Rule-#** Unless the context indicates otherwise, a reference to the Fed.R.Civ.P.

**Rule-11** Rule 11 of either the Colorado or Federal Rules of Civil Procedure, depending on the context. *I.e.,* "Rule 11" when describing conduct in Boscoe-I refers to the Co.R.Civ.P. 11; and, when describing conduct in Boscoe-II, refers to Fed.R.Civ.P. 11.

**Rule-26** Fed.R.Civ.P. 26, as amended in 2015.

**Rule-37** Fed.R.Civ.P. 37.

**SCOTUS** The United States Supreme Court

**ST-CT**      The state court hearing the consumer debt collection case brought by Lambs on behalf of their client Vantium against Consumer (Boscoe-I).

**Vantium** The client of Appellees in Boscoe-I on whose behalf Boscoe-I was filed.

## INTRODUCTION

28 U.S.C. § 1927 **only** awards fees against attorneys whose conduct "so multiplies proceedings unreasonably and vexatiously" as to cause "excess...fees [to be] reasonably incurred because of such conduct."  In case 20-1278, this Court vacated [#350] (App'ts-App-0212) D-CT's Section-1927-Fees-Award against attorney Appellant Karen Hammer ("Hammer"). On remand, Defendants again failed to meet Section-1927 requirements.

The case named former client ("Boscoe") plaintiff pursuant to an agreement requiring Hammer to serve as counsel-of-record and Boscoe to be named-plaintiff on Fair Debt Collections Practices Act ("FDCPA") claims.[1]

This Court's vacating-order [#350] (App'ts-App-0212) gave specific instructions to defendants ("Defendants" or "Lamb") and D-CT on Section-1927 – neither complied in full.  D-CT awarded **lower** fees that Defendants

---

[1] Boscoe retained 100% of her statutory FDCPA-plaintiff-award and 70% of fees she had actually paid Hammer to defend against a state debt collection case ("Boscoe-I").  Boscoe also sought recovery of the reasonable fees of Hammer for the FDCPA litigation.

did not properly establish and D-CT did not properly determine. [#360] (App'ts-App-0346).

Hammer seeks reversal of the 2022-Section-1927-Award on these grounds.

## JURISDICTIONAL STATEMENT

D-Ct had federal question jurisdiction pursuant to the FDCPA, without regard to the amount in controversy. 15 U.S.C. § 1692k(d). D-CT entered final judgment on November 14, 2018. [#308] (App'ts-App-0104).  This Court vacated in its entirety the initial Section-1927-Fees-Award ( (App'ts-App-0138) under 28 U.S.C. § 1927 and issued on July 8, 2020). *[#350] Vacate-Remand-Order* (App'ts-App-0212).  D-CT's order (determining only the amount of award) issued on July 29, 2022.  *[#360] Renewed-Section-1927-Fees-Award* (App'ts-App-0346).   This Court's jurisdiction arises under 28 U.S.C. § 1291. In accordance with App-Rule4(a)(1), the Notice of Appeal was timely filed on August 29, 2022.  *[#361]-Notice-of-Appeal*  (App'ts-App-0355).

**ISSUES PRESENTED FOR REVIEW**

1.  Did D-CT commit reversible-legal-error in granting Lambs' third Section-1927-Fee-Motion that failed to adequately allege, argue, ***or*** establish the essential elements required by Section-1927 for imposing sanctions thereunder and for the amount of fees, if any, awarded?

2.  Did D-CT commit reversible legal error by failing to exercise its discretion to make a determination in its 2022-Section-1927-Fee-Award that Hammer's conduct qualified for sanction under Section-1927 (despite this Court vacating in its ***entirety*** that prior D-CT order)?

3.  Did D-CT also commit reversible-legal-error by failing to apply the standards provided by this Court [#350] (App'ts-App-0212) when vacating-in-its-entirety the 2020-Section-1927-Fee-Award [#344] (App'ts-App-0138)?

4.  Did D-CT commit reversible-legal-error by striking Hammer's Verified-Surreply [#356] (App'ts-App-0275) to new arguments Defendants made in their Reply [#355] to Section-1927-Fee motion (App'ts-App-0264)?

5.  Did D-CT commit reversible-legal-error by failing to recognize and then either apply or overturn the law-of-the-case?

## STATEMENT OF THE CASE

### A. NATURE OF THE CASE - FACTUAL BACKGROUND

#### 1. DEFENDANTS EMBRACE THEIR LYING TO COURTS.[2]

D-CT's final-judgment [#308] (App'ts-App-0104) created unreversed the

law-of-the-case under which Hammer's not affirmatively disclosing that

she was *also* a real-party-in-interest (when she knew that she was *also* a

real-party-in-interest in addition to her client Boscoe) was deemed

deliberately dishonest.[3] *[#350] Vacating-Order* App'ts-App-0215).  That

---

[2] Hammer makes this admittedly distasteful statement because it is well-grounded in fact and law and is directly relevant and material to the determinations D-CT and this Court are required to make under these circumstances.  Defendants' false assurance that *they* had incurred Section-1927-Fees was willfully made in filings where they *falsely* accused Hammer of dishonesty for her (reasonable) belief that she could properly name only one of two actual real-parties-in-interest as plaintiff. Defendants' misconduct was *willful* because it occurred after the law-of-the-case had already been established (at their request), as explained herein.

[3] Hammer had relied on controlling legal authority that not all real-parties-in-interest need be named parties so long as the opposing party is not subject to multiple recoveries against them.  [#295] *Response-re-Summary-Judgment* (App'ts-App-0096).  Hammer also relied on controlling legal authority under which Boscoe's clear financial interest made her a real-party-in-interest.  *Id.*  Hammer's status as real-party-in-interest was not relevant to the underlying issue of whether Defendants had violated the

specific law-of-the-case was a legal determination (improperly) established on summary judgment upheld by this Court.  [#308] *Law-of-Case-Order* (App'ts-App-0125 – 0126).

### a. <u>Lies to D-CT and this Court.</u>

Here, Defendants repeatedly, falsely assured the courts and Hammer that "***Lamb***" had "incurred" the Section-1927-Fees he sought. *E.g., [#353] Renewed-§1927-Fees-Motion* (App'ts-App-0228) ("***Lamb*** is Entitled to $32,884.64 in Attorneys' Fees as ***He*** Incurred this Amount 'Because Of' Ms. Hammer's Conduct") (*emphasis added*); *Appellee-Response-Brief* (App'ts-App-0196) ("Mr. Lamb initially sought recovery of all of ***his*** incurred attorneys' fees") (*emphasis added*).

Based upon these false assertions, ***this*** Court (as well as D-CT and Hammer reasonably) assumed that Defendants sought fees ***they*** incurred. Defendants were ***secretly*** seeking fees under an agreement to which they

---

Fair Debt Collection Practices Act ("FDCPA") in its collection activities against Boscoe. *Id.* at 22 ("In *Robey*, the Tenth Circuit held that FDCPA standing is met if Defendants 'attempted to collect money in violation of the FDCPA,'" because "actual damages are not required for standing under the FDCPA"*citing, Robey v. Shapiro,* 434 F. 3d 1208, 1212 (10th Cir. 2006)).

were not parties and for which they ***never*** had any financial obligation.

*E.g., [#350] Order* (App's-App.-0221).[4]    In contrast, they persuaded D-CT

that Hammer had been dishonest when Boscoe as plaintiff – and Boscoe

***did*** have an ongoing financial interest in the recovery sought under the

---

[4] This Court's Order-[#350] vacated D-CT's entire Section-1927-Fees-Award-[#344], albeit without condemning the portion that determined Hammer's conduct was sanctionable.  *[#350] Vacate-Remand-Order* (App'ts-App-0219) ("The record supports the findings that, in committing the four sanctioned actions, Ms. Hammer acted dishonestly, unreasonably, and vexatiously[, and s]o we will not disturb those findings").  Defendants have now confessed that they were engaging in serious related conduct even while seeking Section-1927-Fees – they falsely stated that ***they*** had incurred fees when they absolutely knew they had not in the very same filings in which they insisted that Hammer's not disclosing that she was ***also*** a real-party-in-interest in addition to Boscoe was dishonest, vexatious, and unreasonable.  D-CT embraced the myth of Hammer's dishonesty (despite admitting she had plausible innocent explanations for her conduct), yet refused to consider or address ***absolutely*** false statements Defendants made in ***every*** Section-1927-Fee-Award filing.  D-CT did not acknowledge this disparate treatment and its ***refusal*** to make a fresh determination (or even restate its prior analysis) of whether it ***continued*** to consider Hammer's conduct to be dishonest is, in these circumstances, a clear abuse of discretion.  While this Court determined that the ***prior*** record could support D-CT's conclusions about Hammer, its vacating Section-1927-Fee-Award-[#344] (App'ts-App-0138) inherently required that D-CT at least go through the exercise-of-discretion required to evaluate the ***current*** record presented to it by the 2nd-Renewed-Motion-[#353] (App'ts-App-0226).

FDPCA and a prior financial obligation for "actual damages" she sought thereunder.

Repeatedly *falsely* claiming *Defendants* had *incurred* fees for which they sought relief (instead of naming their insurer as incurring fees) *was* deliberately dishonest and directly contravened the law-of-the-case making such conduct dishonest. In contrast, Hammer acted before the law-of-the-case had been established and had relied on *controlling* legal authority permitting naming only one real-party-in-interest as plaintiff (and not all). Here, Rule-11 and its appellate counterpart clearly prohibited Defendants from knowingly making false affirmative statements in filings.

Defendants *could* have but did *not* directly disclose that *insurer* had incurred fees and explained their theory (here, groundless and unsupported) why Defendants were proper movants seeking recovery for their insurer. Had Defendants done so, Hammer would have litigated this issue, and now she does so.

In seeking and obtaining the initial determination [#308] (App't's-App-

0104) that the case be dismissed on summary judgment *without*

considering the merits of the FDCPA claim, Defendants falsely assured D-

CT that *they* had been prejudiced (by Hammer's failure to *add* herself as a

named-plaintiff *in addition* to Boscoe) because *Defendants* incurred legal

fees.  Here, they defend against FDCPA litigation relying upon a State-

Court final-judgment previously determining that Defendants had misled

*that* court.[5]

---

[5] Defendants did *not* deny that they had lied to ST-CT and Boscoe's counsel
(Hammer), but argued instead that (i) the FDCPA shields attorneys from
liability for their lies to the court, (ii) their lie wasn't reasonably believable
and so was not in fact misleading.  *Motion-to-Dismiss [#18]* (App'ts-App-
0058) ("in the adversarial system, if a statement is made to the court, the
opposing party can establish its inaccuracy"); *id.* at 7-8 ("There can be no
legitimate contention that the [false] statements at issue here could have
or did confuse Ms. Hammer or her client").  Further, Defendants argued
that lies to "(1) Plaintiff's lawyer Ms. Hammer; (2) police officers; and (3)
the Court" don't count under the FDCPA if the consumer is not present at
the time of lying.  *Id.* at 6.  D-CT had already rejected the argument that
attorneys have a lying-safe-harbor under the FDCPA (*Order-Denying-
Dismissal [#53]* (App'ts-App-0062)), yet this was the argument that
Defendants presented as their *only* stated real-party-in-interest defense
(arguing lies to third parties about the consumer deprives the consumer of
real-party-in-interest status for FDCPA claims.  *Answer [#56] ¶17* (App'ts-
App-0069) ("Plaintiff's Complaint may be barred or limited because she is
not *the* real party in interest...as all alleged FDCPA statements were made
to third parties") (*emphasis added*).

Their renewed Section-1927-Fees motion relied on the affidavit of their counsel (Hardy) "as evidence of the ***reasonableness*** of the attorneys' fees sought" but did ***not*** characterize the Affidavit as providing evidence to satisfy any specific Section-1927-Fee element. *[#353] 2nd-Renewed-Motion* (App'ts-App-0234) (*emphasis added*).  *Accord, [#353-5] Hardy-Affidavit ¶10* (App'ts-App-0245) ("Based upon my review of the file related materials, court docket, and understanding of the proceedings in this lawsuit both through review and first-hand experience, the time spent and attorneys' fees incurred are ***reasonable*** and ***necessary*** in ***defense*** of this lawsuit") (*emphasis added*).

Hammer's Response [#354] (App'ts-App-0247) argued and demonstrated that Defendants provided no ***evidence*** that they satisfied the specific Section-1927 prerequisites:

> 2nd-Renewed-Motion-for-Fees-[#353] fails to identify "facts" or otherwise provide a standard "facts" section to which the legal standards in the "Legal Analysis" section apply. " "Evidence" appears only in Mr. Hardy's affidavit (Lambs' Exhibit B [#353-5]) as "support[ing]" but not establishing a §1927 fee award. [#353] [App'ts-App-0234). The Affidavit swears Lambs' billed tasks were "reasonable and necessary in ***defense*** of this lawsuit" without addressing §1927

19

factors. [#353-5] ¶10 at 3 [(App't's-App-0245). Lambs do ***not*** allege that any category of fees or any specific billing entry is ***evidence*** of "***excess***...fees reasonably incurred ***because*** of" conduct that "unreasonably and vexatiously" "***multiplie[d] proceedings***."

*[#354] Response* (App't's-App-0256) (*emphasis added*).

In their Reply [#355] (App't's-App-0264), Defendants identified for the first time what purported evidence they relied on to satisfy the "excess" and causation requirements of Section-1927.  *[#355] Reply n.* 2 (App't's-App-0269) ("Ms. Hammer claims that Mr. Lamb's counsel's Affidavit does not attest to [excess and causation] standard[ but] this is met through the pleading and exhibits with individualized entries, which counsel attests to in the Affidavit").  This ***new*** false statement in the Reply-[#355] stood on its own and could not have been directly addressed in Hammer's Response-[#354].[6]

---

[6] Had Defendants simply conceded Hammer's point in their Reply-[#355] (App't's-App-0264), a Surreply would not have been invited.  So too, had Hammer overlooked some statement ***already*** made by Defendants in their motion (and she did not), Defendants could have properly quoted specific, existing sentences from their prior motion-package, and ***that*** would not have triggered a proper Surreply.  Their Reply-[#355] instead ***newly*** mischaracterized the Affidavit-[#353-5] (App't's-App-0243) by attempting to

So Hammer re-examined the Affidavit to test the Reply's ***new*** [mis-]characterization of the Affidavit.  The motion-[#353] had only mentioned this Affidavit in one sentence on the narrow issue of whether the fees were "reasonably incurred."  *[#353]* (App'ts-App-0234).  Now, the Reply-[#355] argued that Hardy's attestation was significantly broader than the reasonableness of fees.  *[#355] Reply n. 2* (App'ts-App-0269).  Obviously words only in the unattested Section-1927-Fees motion could ***not evidence*** facts required by Section-1927 (no person provided sworn verification of the motion).

In evaluating whether her Verified-Surreply was appropriate and invited, Hammer relied on current Tenth Circuit controlling legal authority setting limits on the scope of a reply (*Local-Rule 7.1(d)*) and treating an improperly broad reply as implied consent for a surreply thereto. *[#356] Verified-Surreply* (App'ts-App- 0275. 0277).

Hammer's test of the accuracy and adequacy of Defendants' ***new***

_____

falsely expand the scope of purported evidence the Affidavit contained. Hammer was entitled to respond to this new information in a Surreply.

argument first raised in their Reply-[#355] (App'ts-App-0264) identified

fatal deficiencies that only became apparent *after* Reply.  Defendants'

Reply *newly* confessed that the Affidavit was the ***only evidence*** on all

issues other than whether the billing was "reasonable" to "defend" the

entire case.  Hardy's Affidavit-[#355-3] (App'ts-App-0243) attested that

specific entries billed specific amounts for specific work on specific dates,

but didn't address whether these were "excess" fees caused by specific

sanctionable conduct of Hammer.  Hammer confirmed that Defendants

offered *no* evidence that the fees they sought were "excess" ***caused by***

Hammer's allegedly vexatiously and unreasonably multiplying

proceedings.  Recall (*supra*) that the Affidavit merely attested that the fees

were "in defense of the lawsuit" ***without*** attempting to attest (and thus not

creating evidence) that the fees were *excess* (beyond the general lawsuit

defense) and ***caused by*** specific conduct of Hammer that "unreasonably

and vexatiously multiplied proceedings" as required by Section-1927.

Defendants had persuaded D-CT that Hammer should be sanctioned

because "any conduct that, viewed objectively, manifests either

intentional or reckless disregard of the attorney's duties to the court is sanctionable." *[#344] Initial-Fees-Order* (App'ts-App-0142); *[#288]*

*Defendants'-Summary-Judgment-Motion* (App'ts-Supp-App-0100) ("Ms.

Boscoe Chung is not entitled to reasonable attorney's fees under the

FDCPA if successful in this lawsuit as she is not ***obligated*** to pay any such

fees to Ms. Hammer") (*emphasis added*).   Defendants persuaded D-CT that

Hammer had dishonestly named Boscoe as the person seeking to recover

statutory fees even though Boscoe did in fact have initial liability for such

fees when the fees were incurred and retained a financial interest in the

FDCPA litigation through which the balance of Hammer's prior fees would

be paid:

> On November 26, 2014, Ms. Boscoe and Ms. Hammer entered into a written agreement to compensate Ms. Hammer for the balance of the fees Ms. Boscoe incurred during the state court proceeding. [*[#308]* (App'ts-App-0105).]
> ***
> I find that Ms. Hammer's decision to name Ms. Boscoe as the real party in interest was neither an understandable mistake nor an honest mistake based on Ms. Hammer's own admission that she named Ms. Boscoe as the plaintiff "to keep the case simple and streamlined." [*[#308]* (App'ts-App-0120).

Under these specific circumstances, Defendants ***successfully sought*** and ***obtained*** the law-of-the-case that only the person who had in-fact ***paid*** attorney fees qualified to seek recovery of such fees.  *See, supra.*

Hammer specifically argued and established that Defendants had *successfully* made this distinction important in this specific litigation and were, therefore, bound by it. *[#356]* (App'ts-App-0275).  They reasonably understood that Defendants' repeated assurance to D-CT and this Court that ***Defendants*** had incurred fees and that Hammer owed ***Defendants*** specifically these fees under Section-1927 was improper under the law-of-the-case.

Hammer specifically raised in her Surreply that this distinction had become law-of-the-case.  *[#356]*  (App'ts-App-0278) ("Hammer uses the term "false" to reflect Lambs' demonstrated intent to deceive based upon ***their own standards*** for defining deceit that they had already ***successfully*** applied to Hammer").  Neither Defendants nor Hardy attempted to explain why their own standards they applied to Hammer should not apply to their own conduct.

24

Defendants and Hardy had reasonable alternatives to avoid mischaracterizing Defendants as having specifically "incurred" the fees they sought under Section-1927. Hardy and Defendants could have simply stated directly that Defendants sought fees incurred by their insurer on their behalf for which they never had any financial liability, and ***then*** dealt with or explained the legal consequences of that admission. They did ***not*** do so, despite their having created this distinction (and thus having actual notice of it).

Hardy and Defendants also (falsely) claimed that their disclosure of the insurance defense policy to Hammer and Boscoe made conflicting statements to the courts ***proper***:

> 5. The Surreply argues for the first time that Mr. Lamb somehow misled Ms. Hammer and this Court regarding the applicable insurance policy. To the contrary, the Affidavit attached to the Second Renewed Motion for Attorneys' Fees identifies and describes the insurance relationship. [Doc. 353-2, ¶ 9]. Similarly, counsel identified this insurance relationship in two prior Affidavits that supported requests for attorneys' fees. [Doc. 310-2, ¶ 11; Doc. 338-6, ¶ 9]. Also, this insurance policy was identified in Mr. Lamb's Initial Disclosures and he produced a copy of the insurance policy on October 19, 2015 – more than six year ago. [Doc. 173-2]. Therefore, Ms. ***Hammer*** had all the information necessary to raise any issues in the Response, but failed to

do so.

*[#357] Strike-Motion* (App'ts-App-0325) (*emphasis added*).  But the policy

itself permits Defendants to ***directly*** incur legal fees that are then paid by

the insurer. *[#356-1] §D I(*App'ts-App-0314).  And the policy permitted

Defendants to directly engage their own counsel at their own expense as

***additional counsel*** that associates with insured's designated counsel.

*[#356-1] §B* (App'ts-App-0313).   Thus, Hammer did not have ongoing actual

notice that ***in fact*** Defendants had ***no liability*** and/or ***no out-of-pocket*** costs

for which they sought Section-1927-fees – that notice did not occur until

Defendants simply failed to rebut this conclusion in their Reply-for-Strike-

Motion:

> 6. Ms. Hammer also argues that Mr. Lamb failed to explain that the insurance company was paying attorneys' fees in his Initial Disclosures. However, this is not required under Fed. R. Civ. P. 26(a)(1)(A)(iv) and, again, Ms. Hammer had a copy of the policy. She asserts that Mr. Lamb cannot recover attorneys' fees under 28 U.S.C. § 1927 because he did not pay or incur them. Procedurally, she has waived this argument by not timely raising it.

*[#357] Motion-to-Strike-&-Response-to-Surreply*  (App'ts-App- 0325 – 0326).

Lastly Hardy and Defendants argued that their lie doesn't count because

they had provided **_potentially_** contradictory information to **_Hammer_** in

discovery and that she should have known they were lying even though

other reasonable conclusions were possible:

> As articulated in detail in the Reply with specific citations supported by
> the record, Mr. Lamb and his counsel have consistently identified the
> role of insurance in this case from Initial Disclosures through prior
> requests for attorneys' fees. Ms. Hammer argues that Mr. Lamb and his
> counsel have hidden the role of insurance, including who is responsible
> for payment of attorneys' fees. This is belied by the identification and
> production of the insurance policy many years ago and the three
> consistent affidavits by counsel explaining the role of insurance in this
> case.

*[#359] Reply-for-Strike-Motion ¶7* (App'ts-App-0344).

Recall, that Hammer raised these issues defensively to protect herself

from Defendants' recovering Section-1927-Fees to which they had not

established their entitlement:

> 2nd-Renewed-Motion-for-Fees-[#353] fails to identify "facts" or
> otherwise provide a standard "facts" section to which the legal
> standards in the "Legal Analysis" section apply. "Evidence" appears
> only in Mr. Hardy's affidavit (Lambs' Exhibit B [#353-5]) as
> "support[ing]" but not establishing a §1927 fee award. *[#353]* (App'ts-
> App-0234). The Affidavit swears Lambs' billed tasks were "reasonable
> and necessary in defense of this lawsuit" without addressing §1927
> factors. *[#353-5] ¶10* at 3[ (App'ts-App-0245)]. Lambs do not allege that
> any category of fees or any specific billing entry is evidence of

"excess...fees reasonably incurred because of" conduct that "unreasonably and vexatiously" "multiplie[d] proceedings."

*[#354] Response* (App'ts-App-0256).

Here, Hardy's Affidavit stated that the hourly ***rate*** for fees incurred were set by a third-party agreement with Hardy's firm.  *[#353-5] Hardy-Affidavit ¶9* (App'ts-App-02440 - 0245) (in a paragraph otherwise disclosing the hourly rate at which work was billed and asserting the reasonableness thereof, Hardy stated that "my law firm was compensated for its defense of this lawsuit on an hourly basis").  This statement is not mutually exclusive with the direct statement that Defendants themselves had "incurred" these fees – this statement does not disclose that Defendants did not in fact "incur" any of the Section-1927-fees they seek to recover. Hammer reasonably interpreted this statement meant that the "hourly basis" part of compensation was set by a standard agreement with the insurer for ***all*** clients they sent to Hardy's firm.

Hammer's Response [#354] (App'ts-App-0247) argued that ***only*** in their Reply did Defendants directly state for the ***first*** time that they relied on the

Affidavit specifically to establish *all* Section-1927 elements:

> Ms. Hammer claims that Mr. Lamb's counsel's Affidavit does not attest
> to this standard. (Dk. 354, p. 7, ¶ 23). However, this is met through the
> pleading and exhibits with individualized entries, which counsel attests
> to in the Affidavit.

But the statements in Hardy's Affidavit (App'ts-App-0243) appeared merely

to support the *reasonableness* of the hourly rate and *did not* disclose that

Defendants had *not* incurred either fees or liability therefor.  Defendants

were untouched by these fees because *only* the insurer had liability for

and made payment of such fees.

Thus, although Defendants (improperly) succeeded in striking

Hammer's verified-Surreply (App'ts-App-0275), their written statements in

their Strike-Motion filings under Hardy's Rule-11 certification remain in

the record actually reviewed by J-Domenico before (improperly) granting

that strike-motion.  Defendants could have moved to strike the verified-

Surreply without addressing the substance thereof, but chose to make this

written admission (a belated, unsuccessful attempt to mitigate the effect of

Hardy and attorney-Defendants' breach of the duty of candor to D-CT for

falsely stating that Defendants **_had incurred_** these specific fees when they had not done so).

Hammer's reasonably believed (and continues to believe) that it would have been unprofessional had she accused Hardy (and Defendants) of breach of duty of candor to D-CT when at least one reasonable inference from the information they provided was that, even if the hourly rates were set by a third-party agreement and even if the defense-policy had a zero-deductible, Hardy's firm might still have required Defendants to have direct liability (leaving it to Defendants to recover funds from the insurer) or secondary liability (making Defendants liable for any fees on these issues not paid by the insurer). *[#356] Surreply ¶22* (App'ts-App-0286 – 0287).

> Before accusing Hardy, Hammer considered the possibility that some other evidence existed that Hardy knew about (to support his Rule-11 certification) but that he omitted from his personal affidavit. Not until the Strike-Motion-[#357] [App'ts-App-0323] (also under Hardy's Rule-11 certification) alleged that Hammer had always had all available information on the fees did Hammer realize that no evidence existed because Lambs had not in fact ever incurred fees.

*[#358] Response to Strike-Motion ¶5* (App'ts-App-0333).

But one reasonable interpretation (and to Hammer, the most

reasonable interpretation) of Hardy's alleged "explain[ation of] the role of

insurance in this case" only swore that the ***hourly rate*** charged for the

matter was one set by an agreement with the insurer:

> 9.     Based on the agreement between Gordon & Rees LLP and
> Mr. Lamb's insurance carrier, my law firm was compensated for its
> defense of this lawsuit ***on an hourly basis***. The attorneys' fees
> charged by my law firm for the defense in this matter are as follows:
> $250/hour for partners and $210/hour for associates. Based upon my
> background and experience, the hourly rates for attorneys' fees
> associated with my law firm's defense in this lawsuit are equivalent
> to what is customarily charged in the Denver metropolitan area for
> similar legal services and the type of work performed.

*[#353-5] Hardy-Affidavit ¶9* (App'ts-App-0244 – 0245) (*emphasis added*).

Because Hardy had affirmed to the D-CT (and this Court) that ***Defendants***

had incurred fees, Hammer reasonably concluded that the Affidavit was

consistent with the direct statements to the courts – Hardy's billing rate

could have been set by his firm's agreement with the insurer while still

requiring Defendants to be primarily or secondarily liable for payment of

fees.

A direct accusation to the contrary would have been improper and

unprofessional *until* Defendants' Reply for Section-1927-Fees presented

for the first time its new argument that Defendants relied *solely* on Hardy's

Affidavit (one of several exhibits) to *evidence every* element of *Defendants'*

Section-1927-Fees claim.  Only in seeking to rebut this specific (and new)

argument was Hammer able to identify that Hardy's Affidavit might

suggest a position that directly contradicted the main filing it purported to

support.

Thus, Hammer preserved below the issue that *Defendants* had

mischaracterized the fees they sought as having been incurred by them.

### b.    <u>Defendants Admit that They Assume Lies to COURTS Don't Count.</u>

This case presented FDCPA claims against Defendants for statements

the ST-CT had already determined in final-judgment that they had falsely

made when attempting to collect a consumer debt against Boscoe

(represented by Hammer). *FDCPA-Complaint-[#1]* (App'ts-App-0037 –

0041).

Defendants' arguments revealed their comfort with *their* lying to the

court, stating that the FDCPA shields attorneys from liability for their lies

to the court because "in the adversarial system, if a statement is made to the court, the opposing party can establish its inaccuracy. " *Motion-to-Dismiss [#18]* (App'ts-App-0050).[7]  Defendants demonstrate that they have a ***continuing*** pattern of assuming lying-to-courts is permissible and proper, renewing an almost identical argument in their response to Hammer's Verified-Surreply [#356] (App'ts-App-0275):  "The Surreply argues for the first time that Mr. Lamb somehow misled Ms. Hammer ***and this Court*** regarding the applicable insurance policy [but] Hammer had all the information necessary to raise any issues in the Response[-[#354] (App'ts-App-0247], but failed to do so." *Motion-to-Strike-&-Response-to-Surreply-[#357] ¶5* (App'ts-App-0325) (*emphasis added*).  Defendants in effect argue that Hammer ***should*** have known that Hardy's statement (under Rule-11-

---

[7] It was in this context that Defendants argued to D-CT that their lying to D-CT (and, similarly, to this Court, when affirmatively stating that **Defendants** had inccured fees) was irrelevant because Hammer bore the burden to spot and correct lies to the Court.  *[#357]* (App'ts-App-0326) ("Hammer had a copy of the policy"). They admit that their Initial-Disclosure did ***not*** disclose that Defendants had ***no*** liability to Hardy's firm for fees: "this is not required under Fed. R. Civ. P. 26(a)(1)(A)(iv)." *[#357]* (App'ts-App-0325 – 0326).

certification) that **Defendants** had personally "incurred" fees was a lie, and

that this made **Hardy's false statement** to D-CT and this Court on this issue

reflect adversely on Hammer and not on Defendants or Hardy.

Yet the Colorado Oath of Admission requires attorneys to treat each

other with "courtesy."

[https://coloradosupremecourt.com/Current%20Lawyers/Oath.asp](https://coloradosupremecourt.com/Current%20Lawyers/Oath.asp).   As a

longstanding member of the CBA/DBA Joint Professionalism Coordinating

Council, Hammer reasonably believes that attorneys should ***not*** to leap to

judgment (and not leap to accusations) about opposing-counsel conduct

without evidence.  *Verified-Surreply [#356] ¶*12 (App'ts-App-0283) ("Based

on Lambs' and his counsels' prior assurances under Rule-11 that Lambs

had 'incurred' fees, Hammer had previously reasonably assumed that

Insurer-Markel was merely paying Lambs' fees under Gordon-Rees'

agreement with Lambs, rather than the insurer having a separate

agreement with Gordon-Rees to directly pay Lambs' fees").

Defendants also argued to D-CT that their ST-CT lie wasn't reasonably

***believable*** to Hammer and so could not be considered misleading for

purposes of the FDCPA, as if making ***material*** false assurances to courts is

permitted under the FDCPA. *Motion-to-Dismiss-[#18]* (App'ts-App-0049 –

0050) ("There can be no legitimate contention that the [false] statements at

issue here could have or did confuse Ms. Hammer or her client"). Further,

Defendants argued that lies to "(1) Plaintiff's lawyer Ms. Hammer; (2)

police officers; and (3) the Court" don't count under the FDCPA if the

consumer is not present at the time of lying. *Id.* at 0048.

   D-CT had already rejected Defendants' own argument that attorneys

have a lying-safe-harbor under the FDCPA (*Order-Denying-Dismissal [#53]*

(App'ts-App-0062)), yet this was the argument that Defendants presented

as their ***only*** stated real-party-in-interest defense (arguing restricting lies-

about-consumer to ***third-parties*** during debt-collection deprives the

consumer of real-party-in-interest status for FDCPA claims). *Answer [#56]*

¶17 (App'ts-App-0069) ("Plaintiff's Complaint may be barred or limited

because she is not the real party in interest...as all alleged FDCPA

statements were made to third parties"). Defendants rely on Hammer's

attempting to strike ***this*** specific defense (that lies to the court are

permitted under the FDCPA, even though D-CT had already rejected this theory) is conduct that is sanctionable under Section-1927.  *2nd-Renewed-Motion-[#353] ¶1* (App'ts-App-0231).

Here, Defendants and Hardy take an absurd position – that their lying to this Court and D-CT (and to Hammer) is ***permitted*** (despite counsel's false certification under Rule-11(b)(3) that "factual contentions have evidentiary support").  No one forced Defendants or Hardy to lie – they could have made truthful statements and left D-CT and this Court to determine the effect of the ***truth*** on Defendants' Section-1927-recovery.  Defendants mischaracterize Hammer's argument by falsely stating that "She asserts that Mr. Lamb cannot recover attorneys' fees under 28 U.S.C. § 1927 because he did not pay or incur them."  But Defendants have not placed ***that*** question at issue – instead, they attempt to blame ***Hammer*** for ***believing*** Hardy's Rule-11-certification rather than rushing to accuse him and Defendants of making blatantly false statements that cannot be supported by evidence.  First, she simply looked for the evidence to determine if Defendants had met their burden – only in Defendants' Reply

did they state that they relied solely on Hardy's Affidavit for **all** evidence (and no other evidence exists that supports their false-statement that **Defendants** had incurred fees).  Hardy's Affidavit did **not** provide that evidence, but also did not **disclaim** the truth of the false certification under Rule-11 that **Defendants had** incurred fees.

Hammer argued that Defendants did not meet their Section-1927 evidentiary burden that **they** created when they falsely asserted that **they** incurred fees recoverable under Section-1927 (rather than seeking fees incurred by insurer without Defendants' having even **any** financial liability therefore).  They could have presented the truth, but elected – repeatedly – to **embellish** the story, assisted by their counsel (with **actual** knowledge of these matters).

## 2. NO CURRENT D-CT ORDER FULLY EVALUATING SECTION-1927-CONDUCT

This Court's Order *[#350]* made clear that it was vacating the entire sanctions order and not merely one aspect thereof.  *[#350]* (App'ts-App-0222) ("We…vacate the sanctions order, and remand the case for further

proceedings consistent with this decision"). This Court provided a road-

map for Defendants and D-CT to establish to what **extent** the alleged-

conduct vexatiously and unreasonably multiplied proceedings and created

**excess** fees. *Id. (citing, Baca v. Berry,* 806 F.3d 1262, 1268 (10th Cir. 2015)).

> The proper remedy is to vacate the sanctions order and "remand to the
> district court for it to make a new determination under the correct law."
> *United States v. Hasan*, 609 F.3d 1121, 1129 (10th Cir. 2010). Mr. Lamb
> does not suggest an alternative reason to affirm. That is not surprising:
> "With respect to a matter committed to the district court's discretion,
> like the propriety of § 1927 sanctions, we cannot invoke an alternative
> basis to affirm unless we can say as a matter of law that it would have
> been an abuse of discretion for the trial court to rule otherwise."

*[#350]* (App'ts-App-0221 – 0222) (declining to affirm any portion of the

prior order [#344]) (App'ts-App-0138).

> Ms. Hammer, however, urges us not only to vacate the order but also to
> prevent the district court from ordering any fees under § 1927. We
> decline to do so, because we cannot say the district court could not
> properly award any fees under § 1927. *See id.*

*[#350]* (App'ts-App- 0222).

Defendants led D-CT into reversible error by mischaracterizing this

Court's Order [#350]: "Recently, the Tenth Circuit affirmed the imposition

of attorneys' fees, but remanded for further proceedings as to the amount

of the award. (Dk. 350, p. 11)." *[#353]* (App'ts-App-0227).  Hammer's

response [#354]  corrected this mistake, requiring D-CT to rule correctly:

> The Tenth-Circuit had the power to vacate only part of this Court's Fee-Award-Order, but properly exercised its discretion to **vacate in full**. Lambs had the opportunity to challenge the scope of and legal principles set forth in the 10th-Cir-Order, but did not do so.

*[#354]* (App'ts-App-2458).  Defendants' Reply [#355]  (App'ts-App-0264) did

**not** correct the prior error, but instead broadened its error, inviting D-CT

into even broader reversible error than their renewed Section-1927-Fees

motion [#353]:

> [D-CT], as affirmed by the U.S. Tenth Circuit Court of Appeals, has determined that Karen Hammer violated 28 U.S.C. § 1927. The only remaining issue is deciding the amount of attorneys' fees she owes to Mr. Lamb for her conduct.

*[#353]*  (App'ts-App-0226).

D-CT accepted Defendants invitation-to-err: "The finding that her

pattern of conduct was sanctionable was left **undisturbed** by the Tenth

Circuit, so I need not rehash that conduct here." *[#360]*  (App'ts-App-0347)

(*emphasis added*).   This contradicts this Court's actual holding **vacating** the

entire order (*see, supra*).

Regardless, D-CT failed to specifically examine Hammer's conduct and to specifically apply required Section-1927-standards to her conduct. Hammer fully preserved that D-CT could ***not*** properly avoid this essential step in its current order [#360] (without being reversed). *[#354]* )App'ts-App-0256).

Also, in the alternative, D-CT's refusal to "rehash" its prior decision of which specific conduct of Hammer was sanctionable under Section-1927's detailed standards resulted in an order that awarded fees for conduct it did not ***currently*** determine – under this Court's guidance —were sanctionable, as described in part below.

### 3. SECTION-1927-FEES FOR HAMMER'S SEEKING TO STRIKE DEFENDANTS' REAL-PARTY-IN-INTEREST DEFENSE FROM THEIR ANSWER

This Court made a specific example of Defendants' prior improper attempt to justify Section-1927-Fees on their conclusion that such fees "related to" Hammer's conduct:

> The sanctions [erroneously] compensated Mr. Lamb for "fees incurred related to the" sanctioned conduct. Aplt. App. vol. 14 at 3613. But § 1927 does not authorize sanctions to compensate fees merely related to

unreasonable and vexatious conduct. The statute is narrower, authorizing sanctions to compensate excess fees incurred because of the offending "attorney's sanctionable action," *Baca*, 806 F.3d at 1278.

By applying a standard broader than § 1927 allows, the court imposed sanctions that exceed the fees incurred because of Ms. Hammer's sanctionable conduct. For example, the sanctions compensate Mr. Lamb for time spent drafting his answer, work completed before Ms. Hammer's sanctionable conduct in moving to strike a defense raised in the answer.

*[#350]* (App'ts-App-0220 – 0221).

Defendants perpetruated their earlier error (that also led D-CT into error) by assuming that this Court ***only*** rejected their earlier fees because of ***timing*** - as if they merely asked for fees too early in the process and needed to merely identify a later time after which they were entitled to fees.  *E.g., [#353]* (App'ts-App-0231 – 0232) (*emphasis added*):

Specifically, [the renewed request] does not include the attorneys' fees for drafting the Answer, which – according to the Tenth Circuit – was "work completed ***before*** Ms. Hammer's sanctionable conduct in moving to strike a defense raise in the answer." (Dk. 350, p. 10). Based upon this, the total amount sought in attorneys' fees under this category is $5,254.58. This reflects the total of 18.1 hours.

Defendants misconstrued this Court's ruling as holding that they automatically qualified for ***all*** fees incurred ***after*** the triggering event.

41

Hammer directly brought this point of confusion to the attention of

Defendants and D-CT:

> the Tenth-Circuit did not focus on timing per se: all work done after
> the sanctioned conduct is not automatically recoverable. Timing
> doesn't replace causation.

*[#354]* (App'ts-App-0258).  She established that D-CT had only identified

her seeking to strike the real-party-in-interest defense as problematic and

that her motion-to-strike attacked other defenses that D-CT had not

specifically evaluated.  *Id.* ("[Hammer's a]ttempting to strike the real-

party-in-interest defense does not impose fees for all other improperly

pled affirmative defenses" asserted by Defendants to which Hammer also

objected).

Defendants could have, but did not r attempt to establish how the

block of fees they sought for responding to ***all*** of Hammer's motion-to-

strike could be chunked-down to isolate the fees devoted to keeping the

real-party-in-interest defense specifically from being stricken.  Defendants

doubled-down on their error:

> However, Ms. Hammer misses the broader point that Mr. Lamb had

42

to incur attorneys' fees associated with her Motion to Strike that she knew was improper and fundamentally based upon her not revealing information as to the broader premise of the lawsuit, i.e. the correct plaintiff to bring the lawsuit. Given this, Mr. Lamb is entitled to the full amount sought and, alternatively, has removed the entries associated with the Answer and Jury Demand filed before the Motion to Strike as directed by the Tenth Circuit.

*[#355]* (App'ts-App-0270). Defendants' insistence that the entire litigation qualified for Section-1927-Fees led them to dig-in on their time-based evaluation without attempting to establish causation. As demonstrated above, Defendants insisted that – because D-CT had construed Hammer's seeking to strike their real-party-in-interest defense from their Answer as improper – all work done on their ***entire*** response to the motion-to-strike was compensable under Section-1927. Defendants continued to argue for fees ***as if*** all work done ***after*** a certain event (*i.e.* work ***related*** in ***time*** to the event) was ***caused*** by that event – while Defendants changed the wording of their request to make it appear as if they were showing causation, they continued to seek fees to retain a multitude of their defenses that were not dependent on the real-party-in-interest issue.

For this specific category of Section-1927-Fees Defendants requested,

D-CT engaged in clear, reversible error by accepting Defendants'

inadequate analysis and assuming that this Court had merely wanted a

smaller award of fees against Hammer (while this Court instead directed

D-CT to correctly apply the Section-1927 standard).

> Ms. Hammer attempts to nitpick the first category of fees. She argues her knowingly meritless motion to strike affirmative defenses could not have caused all the subsequent work. (Doc. 354 at 12.) But Defendants incurred additional expense because of Ms. Hammer's knowing misrepresentation. Ms. Hammer's decision to advance positions she knew to be false multiplied the Defendants' work.

*[#360]* (App'ts-App-0350 – 0351).

D-CT current Order [#360] awarding fees was clearly erroneous in

not understanding that this Court vacated the prior D-CT order [#344]

(App'ts-App-0138) in its ***entirety*** [#350] (App'ts-App-0222).  The Order

[#360]  was written as if the part determining Hammer's sanctionable

conduct had ***not*** been vacated.  However, the description of this

sanctionable conduct in [#360] (were it merely to incorporate sanctionable

conduct from [#344]) does not match these [#344] descriptions.  *Compare*

the narrow ruling of [#344] *(*App'ts-App-0142) ("She moved to strike

44

Defendants' [specific] affirmative defense that Ms. Boscoe wasn't the real party in interest, while knowing that was the case") *to* the broader sweep of [#360] (App'ts-App-0350) ("Ms. Hammer's sanctionable ***motion*** to strike certain of their defenses").

Even though Defendants' had eliminated their request for Section-1927-Fees for drafting their Answer, their request and D-CT's grant thereof were fatally broad.  Defendants' embrace of block-billing for ***all*** affirmative defenses (rather than specifying time spent on ***each***) also led them to fail to specify fees incurred to protect the specific real-party-in-interest defense.

### 4. SECTION-1927-FEES FOR HAMMER'S "OBJECT[ION] TO MR. LAMB'S MOTION TO DISQUALIFY HER AS AN ATTORNEY FOR MS. BOSCOE, ARGUING THAT THIS WOULD PREJUDICE MS. BOSCOE BY DENYING HER RIGHT TO COUNSEL OF CHOICE." (DK. 308, P. 16).

Defendants' second category of requested Section-1927-Fees improperly continued to seek overly broad fees, seeking

attorneys' fees incurred by Mr. Lamb ***after*** Ms. Hammer objected to the Motion to Disqualify. Mr. Lamb has identified them to reflect only the work performed "because of" this conduct consistent with the decision

of the Tenth Circuit. Specifically, it no longer includes attorneys' fees associated with time spent drafting the Motion to Disqualify.

*[#353]* (App'ts-App-0232) (*emphasis added*).  Although Defendants parroted

"because of" language, they misapplied that standard.

Hammer properly identified these errors in her detailed response

[#354]:

> Lambs describes A-2 as "billing entries associated with the attorneys' fees incurred by Mr. Lamb ***after*** Ms. Hammer objected to the Motion to Disqualify." *Id.* (mistaking timing with causation) (*emphasis added*). Lambs purport to have satisfied the Tenth-Circuit's "because of" standard by "no longer includ[ing] time spent drafting the Motion to Disqualify." *Id.* Exhibit A-2 provides block-billing each of which applies to Lambs' reviewing the full scope of Hammer's objection (extending well beyond the right to choose counsel) and Lambs' full reply (making no mention of the right to choose counsel). *[#353-2]* at 1[ App'ts-App-0238]; *[#47]* at 15 [App'ts-Supp-App-Appellants-Supp-0033] (one sentence in sixteen pages refers to the "party's choice of counsel [a]s 'a fundamental premise of the adversary system'" and the remainder responds directly to Lambs' own arguments); *[#52]* [App'ts-Supp-App-0335] (nine pages of Plaintiff's reply supports the initial positions in *[#44]* [App'ts-Supp-App-0006] without mentioning Boscoe's right to choose her own counsel). Lambs do not attempt to explain how Hammer's one sentence could have "vexatiously and unreasonably" "multiplie[d] proceedings."  Nor do Lambs allege or attempt to demonstrate that this one sentence created "excess" fees.

> Recall, Lambs succeeded in staying discovery until roughly six months ***after*** they moved to disqualify Hammer. *[#43]* at 4[ (App'ts-

Supp-Append-0005)]; *[#44]* (Nov. 6, 2015 motion to disqualify
Hammer); *[#81]* [App'ts-Supp-App-0044 *et seq.*] (May 15, 2016 order
denying motion to disqualify); *[#182-1]* ¶10 (App'ts-App-0078)
(Lambs' July 12, 2016 initial request for written discovery not
explaining the relevance of requested engagement agreements or
mentioning the real party in interest issue); *Revised Rule 26(b)(1)*
(changing permissible scope of discovery to "any nonprivileged
matter that is ***relevant*** to any party's claim or defense").

*[#354]* (App'ts-App-0253 – 0254) (*emphasis added*).

Defendants made the decision to not explain why the fees they sought

were narrowly tailored to the requirements of Section-1927.  Instead, they

fell back on their base argument that Hammer deserved to be sanctioned

and that they were entitled to any fees "related to" her conduct:

> [Hammer] fails to recognize the broader premise that she took a
> fundamentally dishonest position as to the disqualification issue
> knowing that Ms. Boscoe was not her client, that no attorney-client
> relationship existed with her, and she had stake in the litigation as the
> real party in interest. She clearly knew about the engagement letter, yet
> still articulated a fundamental premise that was inconsistent with it,
> which deceived Mr. Lamb and this Court.  She cannot now claim that
> her conduct addressed a mere sentence and a fraction of the attorneys'
> fees associated with this category of conduct. Mr. Lamb seeks the full
> amount requested and, alternatively, has complied with the Tenth
> Circuit's opinion by removing any request as to work for the Motion for
> Disqualification.

*[#355]* (App'ts-App-0270 – 0271).  While this argument expresses

Defendants' clear feelings about Hammer, it does not attempt to

specifically demonstrate how Hammer's specific conduct ***caused*** 17.3

hours of excess attorney billable hours in the amount of $4,304.79.

Instead, Defendants continued their erroneous formula that sought

recovery of all fees on a matter incurred ***after*** an instance of Hammer's

conduct they had persuaded D-CT was objectionable.

D-CT again accepted Defendants' invitation-to-reversible-error,

neglecting the ***objective*** and ***specific*** analysis required by Section-1927's

unique standards:

> Defendants only claim fees for the time spent responding to Ms.
> Hammer's objections to their motion to disqualify her. (Doc. 353 at 7.)
> Ms. Hammer knew that Ms. Boscoe no longer had an interest in the
> suit. (Doc. 308 at 16.) Defendants only spent time responding to her
> objections because of Ms. Hammer's knowingly false representations.
> Had she responded truthfully to the motion to disqualify, none of the
> other work would have been necessary. It was only because of her
> misstatements that additional briefing was done.

*[#360]* (App'ts-App-0351). D-CT engaged in clear error when it overlooked

that Defendants' request for this category of fees described narrow,

specific conduct ***they*** defined as Hammer's "arguing that this would

prejudice Ms. Boscoe by denying her right to counsel of choice." D-CT's order [#360] did not determine how Hammer's asserting choice-of-counsel "while knowing that the Engagement Agreement required Ms. Boscoe Chung to 'relinquish[] the right to make any decision in cases brought in your name as plaintiff,'" vexatiously and unreasonably "multiplied proceedings."

Nor did the Order attempt to quantify the number of *excess* attorney-hours billed for Defendant's reply supporting its already existing motion-to-disqualify that related solely to the specific argument of Hammer (protecting Boscoe from prejudice of her right to choose her own counsel) that Lambs relied on as entitling them to Section-1927-Fees for this matter.

Defendants' request and D-CT's grant thereof for this category of fees continued to side-step Congress' precise Section-1927-standards.

5. **SECTION-1927-FEES FOR HAMMER'S "RESIST[ING] PRODUCING THE ENGAGEMENT LETTER ON THE GROUNDS OF RELEVANCE AND ATTORNEY-CLIENT PRIVILEGE EVEN THOUGH SHE KNEW THE LETTER WAS RELEVANT TO THE IDENTITY OF THE REAL PARTY IN INTEREST AND SHE DID NOT HAVE AN ATTORNEY-CLIENT RELATIONSHIP WITH MS. BOSCOE PURSUANT TO THE ENGAGEMENT LETTER." (DK.**

308, p. 16).

Defendants arbitrarily requested "20%" of this category of fees. *[#353]* (App'ts-App-0232). This request directly acknowledged that Defendants had discovery issues broader than their request to produce "the engagement letter." *Id.* The billing entries purportedly supporting this specific Section-1927-Fees request [#353-3] clearly begin with reviewing initial responses to written discovery requests. *[#353-3]* (App'ts-App-0239).

Hammer objected to this arbitrary figure, opening the opportunity for Defendants to demonstrate, if they could, whether a sound basis for this number existed.

> Here, proceedings were multiplied, but by Lambs by (i) obtaining a discovery stay for the period (when most of A-1 through -3 work was done) for which Lambs allege Hammer was withholding information Lambs had not yet even requested, and (ii) stubbornly refusing to explain the relevance of their discovery requests in conferral despite newly-revised Rule 26(b)(1) requiring relevance. Lambs withheld from Hammer the information she needed to properly evaluate Lambs' request for discovery of engagement agreements. Recall that Lambs still could not articulate any specific potential relevance to FDCPA claims or defenses that the engagement agreements would have even on March 15, 2018 when directly questioned by Judge Daniel. [#331] Transcript at 35 lines 7-25 [App'ts-Supp-138 lines 7-25] ("I am somewhat hamstrung because I don't know what I don't know," ultimately falling back on potential relevance to damages). Hammer relied on then-

newly-amended Rule 26(b)(1) that required relevance even before requesting discovery disclosure. No "real party in interest" issue was mentioned in Lambs' initial requests for written discovery and Lambs never made any supplemental requests. [#182-1] [App'ts-App-0074]. Nor did Lambs identify assignment of claims as an issue relevant to their claims or defenses in documents identified as requests for written discovery. This Court has already sanctioned Hammer under Rule 37 and dismissal of the case without prejudice.

*[#354]* (App'ts-App-0260-0261).

Defendants' reply [#355] (App'ts-App-0264) in essence requested that D-CT ignore the precise standards required by Section-1927 and this Court's guidance that Defendants needed to demonstrate causality:

> "'identify the extent of the multiplicity resulting from" Ms. Hammer's sanctionable conduct. *Braley*, 832 F.2d at 1513. And the extent of that multiplicity is not obvious from the record. So we are left to wonder whether certain billing entries reflect work completed because of sanctionable conduct.

*[#350]* (App'ts-App-0221).  Defendants instead offer a different standard than that in Section-1927 (without citation to any supporting authority for this novelty):  Where Defendants do not present a clear record, D-CT should award Section-1927-Fees of any random amount for discovery that reflects "the significance" of the item for which production was sought and

"its ultimate dispositive effect in the case." *[#355]* (App'ts-App-0272). Thus, Defendants assert they should receive "twenty percent of the total attorneys' fees associated with this category of conduct previously identified by this Court [a]s reasonable and well within this Court's discretion to award." *Id.*

Defendants made no attempt to explain how their proposed recovery standard otherwise fulfilled Congress' requirements for Section-1927-Fees or those more particularly described by this Court. Defendants do not deny Hammer's evidence that as late as March 15, 2018 they remained unable to identify what potential or hypothetical relevance the requested engagement agreement had to Boscoe's FDCPA claims. Yet Defendants sought 20% of ***all*** discovery fees for work as early as November 2016. Why? They don't say.

Instead, Defendants improperly attempt to shift their burden to Hammer, without citing any controlling legal authority in support:

Notably, Ms. Hammer offers no alternative either by going through the various correspondence, briefing, court appearances, or other related activities – although she was present and would have this information.

*[#355]* (App'ts-App-0271 – 0272). Defendants' counsel worked ***privately*** on matters – Hammer cannot guess what percentage of their work is recoverable. Why did Defendants choose 20% recovery rather than 8%? Defendants demand that Hammer prove them wrong.

And Defendants failed to show which fees were "excess." They do not rebut ([#355] (App'ts-App-0264)) Hammer's transcript showing ***Defendants*** multiplied discovery proceedings ([#354] (App'ts-App-0247)). Their production-requests ***never*** targeted assignments. *[#182-1]* (App'ts-App-0076 – 0079). Nor did their real-party-in-interest defense suggest assignment issues. *[#56] ¶17* (App'ts-App-0069) ("all alleged FDCPA statements were made to third parties"). Hammer's Response argued that Defendants failed to explain why 20% of discovery fees were "excess" caused by Hammer.

Defendants make no argument that Congress placed the Section-1927 burden on Hammer if they find it awkward to calculate excess fees.

D-CT order [#360] (App'ts-App-0346) granting this category of Section-

1927-Fees did not evaluate how or whether excess fees were caused by any

vexatious and unreasonable multiplying of discovery proceedings by

Hammer, nor did D-CT attempt to determine whether Defendants' random

number of 20% bore any ***actual*** relationship to these specific

circumstances:

> Defendants reasonably request only twenty percent of their fees
> incurred because of discovery. Ms. Hammer wishes that the
> Defendants' billing records were itemized to account for her fraud. I
> will not penalize a party for not predicting another lawyer's intentional
> dishonesty. And Ms. Hammer provides no alternative method of
> calculation. A review of the billing records shows that twenty percent is
> a reasonable attribution of the time unnecessarily spent because of Ms.
> Hammer's sanctionable conduct.

*[#360]* (App'ts-App-0351).  D-CT provides no explanation for what

specifically it identified in its "review of the billing records shows" meets

the standards Congress set for Section-1927-Fees.

This Court specifically instructed D-CT to limit its Section-1927-Fee

award on remand to Section-1927 standards.  *[#350]* at ((App'ts-App-0220)

("By applying a standard broader than § 1927 allows, the court imposed

sanctions that exceed the fees incurred because of Ms. Hammer's

sanctionable conduct").  Neither Defendants nor D-CT identified any controlling legal authority that permits the award of Section-1927-Fees on the basis articulated by Defendants for this category of fees.

Recall (*supra*) in contrast, Hammer did provide evidence that many of the billing entries for which Defendants seek Section-1927-Fees occurred **before** a date-certain (March 15, 2018) by which Defendants had still **not** been able to identify **any** specific issue applicable to this case to which the engagement agreement between Boscoe and Hammer was relevant under the standards set by the FDCPA.

### 6. Section-1927-Fees for Hammer's "delay[ing] Mr. Lamb's counsel's attempts to depose Ms. Boscoe." (Dk. 308, p. 16).

Defendants' final category of purported Section-1927-Fees they allege describes only one change in its request from its prior request [#338] (App'ts-App-0128): "Specifically, it does not include time spent at Ms. Boscoe's deposition. (Dk. 350, pg. 10)." *[#353]*  (App'ts-App-0233).  While this Court's Vacating-Order [#350] did use attendance at the deposition as an example of billing unlikely to have been caused by sanctionable

conduct, this Court provided additional and broader guidance:

> Is the deposition a proceeding that would not have occurred absent Ms. Hammer's sanctionable conduct? We have no reason to think so from Mr. Lamb's motion or the court's order.

*[#350]* (App'ts-App-0221).  Yet Defendants' subsequent Section-1927-Fees

motion [#353] (App'ts-App-0226) continued to shift general costs relating to

the deposition to Hammer with only the exception of removing attendance

at the deposition itself.*[#353-4]* (App'ts-App-0242).

Hammer's Repsonse [#354] (App'ts-App-0247) established that

Hammer's purported sanctionable conduct for this category of fees – her

purported "delay" of Boscoe's deposition – did not vexatiously and

unreasonably multiply proceedings that created excess attorney fees.

*[#356]* (App'ts-App-0321 – 0322).  Instead, Hammer made pinpointed

arguments that the billing entries specifically relating to "delay" were

proceedings at which ***Defendants*** sought to delay Boscoe's deposition.

*[#354]* (App'ts-App-0261) ("The fees on A-4 arise from ***Lambs' decision to***

***delay*** the deposition of Boscoe") (*emphasis added*).

Defendants' Reply [#355]  (App'ts-App-0264) reverted to their

generalized belief that all expenses relating to the deposition were "excess" caused by Hammer's sanctionable conduct. *[#355]* (App't's-App-0272) ("Mr. Lamb needlessly incurred attorneys' fees associated with attempting to obtain Ms. Boscoe's deposition under the false pretense that she was the real party in interest"). Defendants do not explain why they removed attendance at the deposition itself from their renewed Section-1927-Fees request other than to create the veneer that Defendants were complying with this Court's guidance [#350] (App't's-App-0212).

Defendants' Reply [#355] also fails to attempt to demonstrate what specific ***excess*** fees were caused by Hammer's sanctionable conduct

> As to the fourth category of conduct, Ms. Hammer argues that the attorneys' fees incurred associated with Ms. Boscoe's deposition were due to Mr. Lamb's counsel's delay, not her conduct. (Dk. 354, p. 15). However, this is incorrect and the broader premise of this category of conduct identified by this Court is that Ms. Hammer attempted to delay and avoid Ms. Boscoe's deposition based upon the real party in interest issue. This is clearly set forth in both the billing entries and this Court's docket, which reflects the challenges involved in attempting to schedule and take the deposition.

[#355] (App't's-App-0272). Defendants did not specify what these purported "challenges" were and they are not described in the billing

entries.  To the contrary, specific billing entries confirm that the ongoing

dispute to which these entries relate were Hammer's attempts to compel

Defendants to stick with their requested deposition schedule.  *[#353-4]*

(App'ts-App-0242) (8/29/2016 billing entry showing that "Plaintiff" Boscoe

rather than Defendants were seeking to ***expedite*** the deposition that

Defendants had demanded).  This Court required a record showing

"excess" fees caused by Hammer, but Defendants' failed to comply (*supra*).

D-CT Order [#360]  (App'ts-App-0346) granting this category of fees

determined (without any reference to any evidence in the Section-1927-

Fees record) that the "Defendants only request fees [in their renewed

motion] incurred because of Ms. Hammer's delays."  Defendants

themselves do not make this assertion.  There is no evidence of D-CT's

conclusion in the record.

Neither Defendants nor D-CT successfully complied with this Court's

guidance on the requirements of Section-1927 for this category of fees.

## SUMMARY OF ARGUMENTS

This Court emphasized Section-1927's precise requirements in Order-

58

[#350] vacating and remanding D-CT's [#344]. D-CT's order [#360] committed reversible error by not adequately complying.

On remand, Defendants directly assured D-CT that ***they*** incurred these fees, but in Motion-to-Strike-Surreply-[#357] (App'ts-App-0323) admit this is false. ***This*** dishonesty vexatiously and unreasonably multiplied proceedings – ***Defendants'*** breach of duty of candor to D-CT and this Court throughout their repeated Section-1927-Fee requests caused excess fees. ***Defendants*** willfully ignored the standards they successfully made law-of-the-case (when weaponized against Hammer), as further explained herein.

Those who seek equity (and Section-1927-relief is discretionary and equitable) must do equity. Defendants' multiple requests for Section-1927-Fees each falsely claimed ***their*** entitlement (rather than seeking relief on behalf of their insurer).

D-CT improperly disregarded these fatal-flaws in Defendants' Section-1927-Fees filings, which was clearly erroneous and/or an abuse of discretion. Thus, this Court must reverse on the merits.

Hammer seeks attorney fees for Defendants' misconduct (and will

adequately brief these issues when permitted to do so by this Court).

## I.    GENERALIZED STANDARDS OF REVIEW

This Court must reverse legal errors that prejudice substantive rights. The Court reviews legal errors *de novo. Steinert v. Winn Group*, 440 F.3d 1214, 1221 (10th Cir. 2006). Where "'discretion depended on the resolution of a purely legal issue,' we review that issue de novo. " *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015).

Here, *de novo* review is appropriate because D.Ct. *had the authority* to exercise its discretion, but did not engage in the type of  meaningful substantive analysis discretion requires. *Stevens v. CoreLogic,* 899 F.3d 666, 677 (9th Cir., 2018).

Courts apply plain meaning of statutes and rules unless a countervailing principle applies. *Estate of Coward v. Nicklos Drilling*, 505 U.S. 469, 476 (1992) ("courts must give effect to the clear meaning of statutes as written"). *Accord,* David Marcus, *When Rules are Rules* (May 25, 2011), Utah Law Review, https://ssrn.com/abstract=1852856 (interpretive "canons do not permit courts to deviate from a rule's plain meaning").

In the Tenth Circuit, "the trial court's interpretation of the applicable rules of professional responsibility and the trial court's interpretation of a statute" are reviewed "*de novo*." *Butler v. Biocore,* 348 F.3d 1163, 1169 (10th Cir. 2003).  This Circuit has specifically noted "the importance of an attorney's professional reputation, and the imperative to defend it when necessary."  *Butler* at 1167; *id.* at 1168 ("finding of professional misconduct [even when] not accompanied by other sanctions is analogous to a defendant found guilty but given a suspended sentence") (*internal citation omitted*).

"[C]ourts must 'strictly construe[ ]' the statute to guard against 'dampen[ing] the legitimate zeal of an attorney in representing his client.'" *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015).  "Additionally, the FDCPA is a remedial statute, which 'should be construed liberally in favor of the consumer.'" *[#53] Order-Denying-Dismissal-* (App'ts-App-0059).

## II.   ARGUMENT

### A. D-CT MISINTERPRETED THE LEGAL EFFECT OF THIS COURT'S VACATING [#350] THE PRIOR SECTION-1927-FEES ORDER [#344]

61

Recall, this Court vacated in full [#350] D-CT's prior Order [#344] of a

Section-1927-Fees-Award and remanded. In doing so, this Court stated

that, "The proper remedy is to vacate the **sanctions** order and 'remand to

the district court for it to make a new determination under the correct

law.'" *[#350]* (App'ts-App-0221) (*emphasis added*).  The parties and D-CT

were reminded that appellate orders on remand are the law-of-the-case.

*[#350]* (App'ts-App-0216).

In vacating the full-Order [#344] package, this Court declined to affirm

**any** part thereof.  *Cf. V-1 Oil Co. v. Wyoming*, 902 F.2d 1482, 1490 (10th Cir.

1990) (issuing narrow remand "for the **sole and limited purpose** of

determining a reasonable fee") (*emphasis added*).  But D-CT and Defendants

mistook Order [#350] as affirming the part that sanctioned Hammer's

conduct under Section-1927 (*supra*) as if not vacated.

D-CT was required on remand to reexamine the existing filing and issue

a new sanctions order.  D-CT on remand ordered [#352] (App'ts-App-0224 –

0225) Defendants to make "a renewed motion addressing the **amount** of

fees" (*emphasis added*).  Because the entire Order [#344] had been vacated,

D-CT was required to do a full review of the matter and not just determine the fee-amount. *[#354]* (App'ts-App-0255) (argument preserved by Hammer). D-CT refused. *[#360]* (App'ts-App-0347).

This refusal created one of two alternative results, each of which leads ultimately to reversible legal error.

### 1. ALTERNATIVE 1 ON SANCTIONABLE CONDUCT: REAFFIRM SANCTIONABLE CONDUCT BY INCORPORATING [#344] BY REFERENCE.

Did D-CT's citation in Order [#360] (App'ts-App-0346) to its vacated Order [#344] (App'ts-App-0138) regarding Hammer's conduct intend to incorporate that portion by reference? No: D-CT's new determination of the ***amount*** of sanctions assumed that the scope of Hammer's sanctionable conduct exceeded that set forth in [#344]. This Court has already ruled that applying the wrong standard is reversible legal error:

> A district court abuses its discretion if it applies the wrong legal standard or if it enters an order that is arbitrary, capricious, whimsical, or manifestly unreasonable. *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 535 (10th Cir. 2016). We will not disturb a district court's factual findings about an attorney's conduct unless they lack a reasonable basis. *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1169 (10th Cir. 2003).

*[#350]* (App'ts-App-0218).

In Order [#344], D-CT's Section-1927-Fees-Award accepted Defendants' description of Hammer's sanctionable conduct (for any category of fees awarded).  *[#344]* (App'ts-App-0144) (referring to "the four specific instances of dishonest conduct identified by Judge Daniel...(Doc. 338 at 5–7)).  Defendants' renewed Section-1927-Fees-motion repeated these descriptions.  *[#353]* (App'ts-App-0231-0233).

This Court instructed D-CT to determine the **extent** to which specific conduct vexatiously and unreasonably multiplied proceedings (*[#350]* (App'ts-App-0220) and the **excess** fees **caused** by Hammer's multiplying proceedings (*[#350]* (App'ts-App-0221).

    **a.**       **The Fee Award for Motion-to-Strike-Answer Filings Was Based on a Broader Scope of Sanctionable Conduct than Was Briefed by the Parties (and Did Not Properly Apply Section-1927 Standards).**

Defendants argued that "Hammer attempted to Strike Mr. Lamb's affirmative defense that Ms. Boscoe was not the real party in interest . . . even though she knew the Engagement Letter clearly made an issue of real party in interest." *[#353]* (App'ts-App-0231).  Hammer's respond to

Defendants' **specific** request. [#354]  (App'ts-App-0258) (*see, supra*).  But D-CT moved the goal-post.

D-CT's calculated fees more broadly, treating Hammer's **entire** motion-to-strike-answer as sanctionable conduct under Section-1927, rather than her moving to strike the real-party-in-interest defense.  *[#360]*  (App'ts-App-0350) ("her knowingly meritless motion to strike affirmative defenses").   D-CT thus again imposed an award for broad conduct "related to" what Defendants had defined, without determining the amount of excess fees caused by more narrow specific conduct Defendants raised.

Had Defendants' renewed-motion [#353] (App]ts-App-0228) claimed Hammer's entire motion was meritless (and they did not), Hammer would have evaluated that scope.  D-CT's actual Order [#360]  arbitrarily and capriciously deviated from the scope the parties had briefed and is reversible.  *[#350]* (App'ts-App-0218) (arbitrary and caprious decisions are reversible, abuses of discretion).

D-CT's Order also arbitrary and unreasonably concluded that "Ms.

Hammer's only cognizable...objection [was] to...'block-billing.'" *[#360]* (App'ts-App-0349).  Thus, D-CT ignored the full Section-1927 requirements for this specific fee-category. *[#360]*  (App'ts-App-0350).  Additional D-CT reversible-error failed to determine the extent to which Hammer's specific conduct (attempting to strike Defendants' real-party-in-interest defense) had (i) multiplied "proceedings" and (ii) caused "excess" fees.

Here, D-CT's only specific determination for this category of fees was the following:

> Defendants' attorneys spent 18.1 hours, at a cost of $5,254.58 in fees, responding to Ms. Hammer's sanctionable motion to strike certain of their defenses. This amount excludes time spent drafting the Answer, which was done before Ms. Hammer's sanctionable motion was filed.

*[#360]*  (App'ts-App-0350).  Defendants only objected to Hammer's moving to strike the real-party-in-interest defense for this fee-category, but Hammer moved to strike other improper affirmative defenses and this additional conduct was not previously found sanctionable.  Thus, her entire motion-to-strike did not cause excess fees from multiplied proceedings – the parties and D-CT litigated striking more than the real-

party-in-interest defense (and so the number of proceedings was not

multiplied).  D-CT failed to evaluate the extent of "multiplying

proceedings" required for Section-1927-Fees.

Billing partners routinely attempt to identify or make good-faith-

estimates about the components of block-billed entries when evaluating

block-billing in pre-bills.  But Defendants refused to do so.

> As to the first category of conduct...she argues that he cannot
> recover for the entire amount of work associated with the Motion to
> Strike rather than just the real party in interest issue. (Dk. 354, p.
> 12).3 However, Ms. Hammer misses the broader point that Mr. Lamb
> had to incur attorneys' fees associated with her Motion to Strike that
> she knew was improper and fundamentally based upon her not
> revealing information as to the broader premise of the lawsuit, i.e.
> the correct plaintiff to bring the lawsuit. Given this, Mr. Lamb is
> entitled to the full amount sought and, alternatively, has removed
> the entries associated with the Answer and Jury Demand filed before
> the Motion to Strike as directed by the Tenth Circuit.

*[#353]*  (App'ts-App-0231 – 0232).

This Court's excluding Defendants' drafting their answer (prior to

Hammer's sanctionable conduct) was explicitly an "example" of inflated

sanctions – a full analysis on remand was required.  *[#350]* (App'ts-App-

0220  0221) (also, "As these examples show, in awarding Mr. Lamb fees

related to—rather than only fees incurred because of—Ms. Hammer's sanctionable actions, the district court abused its discretion under § 1927"). Had this Court merely disagreed with sanctioning Hammer with Answer-drafting fees, it could have affirmed in part and reversed in part and not vacated and remanded. Instead, the Court determined the D-CT was consistently not applying the correct standards required by Section-1927. *[#350]* (App'ts-App-0220 ("we conclude [D-CT] applied the wrong standard to determine the amount of the sanctions" overall).

Defendants did ***not*** focus on excess fees ***caused*** by Hammer's specific sanctioned conduct, nor did D-CT properly apply this Court's law-of-the-case guidance. D-CT reduced the amount of fees, but D-CT still applied the wrong standard. This portion of fees must be reversed as clear legal error and/or an abuse of discretion.

### b. The Motion-to-Disqualify Fees Awarded Relied on a Broader Scope of Sanctionable Conduct than the Parties Briefed (and Did Not Properly Apply Section-1927 Standards).

Here, Defendants sought Section-1927-Fees where "Ms. Hammer objected to Mr. Lamb's motion to disqualify her as an attorney for Ms.

68

Boscoe, arguing that this would prejudice Ms. Boscoe by denying her right

to counsel of choice." [#353] (App'ts-App-0232). Just as D-CT improperly

treated this sanctioned conduct as broader (without providing an analysis

required by Section-1927) for the first category of fees mentioned here, D-

CT's renewed Order [#360] mistakenly treated this alleged actionable

conduct as much broader than even that defined by Defendants:

> Defendants only spent time responding to her objections because of
> Ms. Hammer's knowingly false representations. Had she responded
> truthfully to the motion to disqualify, none of the other work would
> have been necessary. It was only because of her misstatements that
> additional briefing was done.

[#360] (App'ts-App-0351). D-CT's seeping conclusions arbitrarily and

capriciously failed to cite any part of the record for this fee-category of

fees D-CT relied on for its conclusions.

Defendants took a different approach from D-CT, without otherwise

fulfilling Section-1927 requirements:

> She fails to recognize the broader premise that she took a
> fundamentally dishonest position as to the disqualification issue
> knowing that Ms. Boscoe was not her client, that no attorney-client
> relationship existed with her, and she had stake in the litigation as
> the real party in interest. She clearly knew about the engagement

> letter, yet still articulated a fundamental premise that was inconsistent with it, which deceived Mr. Lamb and this Court. She cannot now claim that her conduct addressed a mere sentence and a fraction of the attorneys' fees associated with this category of conduct.

*[#355]* (App'ts-App-0270-0271).  Defendants' reasoning failed to identify

"excess" fees caused by Hammer's sanctionable conduct.  Had Hammer

been pro se (not naming Boscoe plaintiff), Defendants still could not have

disqualifed Hammer. And Hammer's agreement with Boscoe required (i)

Hammer to serve as counsel-of-record, ***and*** (ii) retained Boscoe's financial

interest and required Boscoe to be named-plaintiff.

     While Defendants may object to Hammer's not volunteering

(in the absence of any targeted discovery request) her full role and

interest, they do not explain which fees would have been avoided under

other circumstances.  Would Defendants ***not*** have filed their supporting

reply had Hammer disclosed the assignment agreement at this stage?

Surely they would have.  Regardless, Defendants admit that the

disqualification "proceedings" would have occurred regardless.

     And Defendants have already been "compensated" for their perceived

prejudice by D-CT dismissing this case with prejudice without their being required to litigate the merits – they reduced their litigation expenses and avoided damages, a net savings to them.  Had Hammer named herself as an additional plaintiff, Defendants would have faced a jury trial that focused in part on Defendants' acknowledgement that they had in fact lied to the state court and to Hammer in the state debt collection case against Boscoe (an FDCPA violation).

**<u>NOTE: The Remaining Categories of Fees Are Addressed Later in this Brief.</u>**

## 2. ALTERNATIVE 2 ON SANCTIONABLE CONDUCT: D-CT'S FAILURE TO REDETERMINE SANCTIONABLE CONDUCT FATAL TO SECTION-1927-FEES-AWARD.

D-CT had a clearly erroneous belief that this Court affirmed a portion of D-CT's prior Order [#344] (App'ts-App-0138) or left it "undisturbed." *[#360]* (App'ts-App-0347).  *Also, see supra.*  This Court did ***not*** affirm in part and vacate in part, it vacated the entire Order [#344].  *[#350]* (App'ts-App-0222) ("We dismiss Ms. Hammer's attempt to appeal the merits judgment [dismissing the case with prejudice], vacate the sanctions order, and remand the case for further proceedings consistent with this decision").

Hammer preserved this issue below.  *E.g., [#354]*  (App't's-App-0248).

D-CT's belief that its determinations of sanctionable conduct was "undisturbed," its Order on remand [#360] failed to determine specific conduct of Hammer mutliplied proceedings per Section-1927.  *[#360]* (App'ts-App-0347) ("The finding that her pattern of conduct was sanctionable was left undisturbed by the Tenth Circuit, so I need not rehash that conduct here").

Section-1927-Fees cannot be imposed until the essential event/conduct for which such sanctions will be calculated has been clearly defined.  The court cannot properly calculate the amount of incremental fees caused by an event until D-CT redid the analsyis this Court vacated, focusing anew on which event/conduct vexatiously and unreasonbly multiplied proceedings (if any).

D-CT engaged in clear error that is reversible by its failure to understand the significance of having its order vacated.

## B. Regardless, D-CT's Calculation of Section-1927-Fees Was Reversible as Clear Error on this Record.

Hammer incorporates by reference the foregoing analysis demonstrating why D-CT's calculation of the first two categories of fees must be reversed.

### 1. THE FEE AWARD FOR DISCOVERY FEES WAS ARBITRARY AND CAPRICIOUS (NOT CONFORMING TO SECTION-1927 STANDARDS).

Defendants sought Section-1927-Fees because "Ms. Hammer resisted producing the Engagement Letter on the grounds of relevance and attorney-client privilege even though she knew the letter was relevant to the identity of the real party in interest and she did not have an attorney-client relationship with Ms. Boscoe pursuant to the Engagement Letter." *[#353]* (App'ts-App-0232).

Hammer's Response [#354] denied that Defendants could be eligible for Section-1927-Fees while Defendants deferred discovery, over Hammer's objection. *[#354]* (App'ts-App-0260). So too, Defendants were ineligible during the time when they identified "damages" as the only relevant grounds for seeking the FDCPA-litigation engagement agreement – the FDCPA awards "reasonable" not "actual" damages for FDCPA litigation.

*[#354]* (App'ts-App-0260).

Hammer's Response [#354] (App'ts-App-0247-et-seq.) provided

evidence that as late as March 15, 2018, Defendants declined to name ***any***

relevance for their FDCPA-engagement-agreement request:

> Recall that Lambs still could not articulate any specific potential
> relevance to FDCPA claims or defenses that the engagement
> agreements would have even on March 15, 2018 when directly
> questioned by Judge Daniel. [#331] Transcript at 35 lines 7-25 [App'ts-
> Supp-138 lines 7-25] ("I am somewhat hamstrung because I don't know
> what I don't know," ultimately falling back on potential relevance to
> damages).

*[#354]* (App'ts-App-0260) (***not*** identifying real-party-in-interest as relevant

to this request). Yet Defendants seek fees for as early as August 18, 2016.

*[#353-3]* (App'ts-App-0239).

Defendants' Reply unwittingly supports Hammer's argument that she

was ***not hiding*** information but rather Defendants had not yet articulated a

legitimately relevant reason for its disclosure. *[#355]* (App'ts-App-0271).

("While Ms. Hammer argues that this is Mr. Lamb's fault, his counsel

certainly did not know at that time that she was engaging in conduct that

would require such individualized and specific billing entries for future

sanction considerations as to the real party in interest issue"). Nor did Hammer! Recall that Defendants' Answer argued that Boscoe could not be a real-party-in-interest under the FDCPA only because Defendants made debt-collections lies to ST-CT and Hammer, but not Boscoe. *[#56]* (App'ts-App-0069) ("Plaintiff's Complaint may be barred or limited because she is not the real party in interest...as all alleged FDCPA statements were made to third parties").

Here, Defendants sought fees "incurred by Mr. Lamb in attempting to obtain this evidence." *[#353]* (App'ts-App-0233). Defendants admit that their "discovery issues in several of the [billing] entries addressed more than just production of the engagement letter," but made an unsupported arbitrary request for 20% of the total attorneys' fees ($14,526.64) associated with the entries shown in" [#353-3]. *[#353]* (App'ts-App-0233). Hammer preserved this issue below. [#354] (App'ts-App-0260) ("***Sounding*** reasonable in the vernacular sense doesn't satisfy §1927's precise standards") (*emphasis in original*). Hammer further describes factual problems with this category of fees requested, *supra,* which she

incorporates by reference here.

D-CT accepted 20% as a reasonable number, but failed to cite facts supporting this number.  *[#360]*  (App'ts-App-0350) ("This percentage is a reasonable allocation to account for the amount of attorneys' fees incurred because of Ms. Hammer's conduct associated with the engagement letter").  D-CT also failed to explain which "proceedings" were multiplied by Hammer – discovery disputes are part of general litigation.  D-CT did not identify why the random 20% named was "excess" caused by Hammer.  Defendants admit that discovery on real-party-in-interest issues did not seem remarkable or worthy of separate billing ***during*** discovery.  The issue clearly became ***emotionally*** distinctive, but only in retrospect.

Section-1927-Fees are unlikely to be appropriate for the type of humdrum events that did not even warrant separate billing – had the work been excessive when being done, the biller would have made this distinction in real time.

This portion of Order [#360] reversible.

In the alternative, Hammer acknowledges that the special email Hardy

drafted for Defendants on June 9, 2018 communicating that Hardy had

received the FDCPA-engagement-letter could arguably qualify for Section-

1927-Fees – the fee Hardy accepted was $23.28. *[#353-3]* (App'ts-App-0241).

All other billing entries that occurred after Hardy's unwillingness to

articulate the potential relevance of this document (on March 15, 2018)

were routine work to review the engagement letter once obtained—this

review would have occurred even had Hammer provided the letter earlier.

### 2. THE FEE AWARD FOR DISCOVERY FEES WAS ARBITRARY AND CAPRICIOUS BECAUSE IT DID NOT CONFORM TO SECTION-1927 STANDARD.

Defendants seek this last category of fees because "Ms. Hammer

delayed Mr. Lamb's counsel's attempts to depose Ms. Boscoe." *[#353]*

(App'ts-App-0233).  Hammer incorporates by reference her description of

this issue, *supra.*

Defendants do not describe how this alleged conduct multiplied

"proceedings" nor how it created excess costs (Defendants have previously

been awarded fees for the hearing to determine that Boscoe should be

deposed.)  Hammer established in her Response that the fees now sought

by Defendants are additional fees incurred in ***their*** seeking to ***further*** delay Boscoe's deposition.  *[#354]* (App'ts-App-0261).

The first billing entry for this category of fees occurred on August 17, 2016.  *[#353-4]* (App'ts-App-0242).  But the existing record (including docketed items) already demonstrates that ***Defendants'*** counsel and ***not Hammer*** repeatedly sought to delay Boscoe's deposition.

- August 1, 2016 [#109] (App'ts-Supp-App-0050): Defendants' motion to extend discovery deadlines, including deposing Plaintiff Boscoe.

- August 2, 2016 [#111]  (App'ts-Supp-App-0054)– Magistrate Mix denies Defendants' delay-motion-[#109] (App'ts-Supp-App-0050).

- August 8, 2016 [#112] ¶5 (App'ts-Supp-App-0056 – 0057) 2-3: "***Defendants*** now seek a two-month extension of these discovery deadlines to provide sufficient time to schedule Plaintiff's deposition…" (*emphasis added*).

- August 11, 2016, parties mutually agree to set Boscoe's deposition for August 30, 2016, and Defendants issue their Notice of Deposition [#119] (App'ts-Supp-App-0059 - 0060).

- August 17, 2016, Defendants seek to delay Boscoe's deposition currently set for August 30, 2016. [#125] (App'ts-Supp-Append-0065) ("Consumer [Boscoe] is ready, willing, and able to comply with the notice of deposition [#119] issued on August 11, 2016 for the date noticed, August 30, 2016.") Hammer **opposes** this delay and suggests Defendants use already assigned co-counsel to conduct Boscoe's deposition. *Id.* Defendants refuse to do so. *Id.* at 13-15 (App'ts-Supp-App-0073-0075).

- [#126] (Appell'ts-Supp-App-0077): August 29, 2016, magistrate telephone conference when Hammer's motion compel **Defendants** to comply with their own Notice of Deposition is denied. Defendants succeed in cancelling the August 30, 2016 deposition, and delaying the deadline to September 15, 2016.

- [#128] (App'ts-Supp-App-0079) August 30, 2016: Defendants granted their motion to extend all general discovery deadlines until September 15, 2016.

- [#135] (App'ts-Supp-App-0084-et-seq.) September 9, 2016: **Defendants**

request Hammer agree to additional extension of deadline to depose

Boscoe.  Hammer agrees.  Defendants file an unopposed motion.

- [#143] (App'ts-Supp-App-0087) September 20, 2016: ***Defendants*** delay

  Boscoe's deposition until September 28, 2016.

D-CT arbitrarily refused to consider Hammer's evidence that the

specific fees Defendants seek here were incurred for ***their*** convenience

***despite*** Hammer's objection to additional delay.  *[#354]*  (App'ts-App-0261 -

0262).  Defendants Reply in support of this category of fees falsely insists

that these fees were caused by Hammer's delay:

> Ms. Hammer argues that the attorneys' fees incurred associated with
> Ms. Boscoe's deposition were due to Mr. Lamb's counsel's delay, not her
> conduct. (Dk. 354, p. 15). However, this is incorrect and the broader
> premise of this category of conduct identified by this Court is that Ms.
> Hammer attempted to delay and avoid Ms. Boscoe's deposition based
> upon the real party in interest issue. This is clearly set forth in both the
> billing entries and this Court's docket, which reflects the challenges
> involved in attempting to schedule and take the deposition.

*[#355]*  (App'ts-App-0272).   Defendants do not specifically allege or provide

evidence that these fees were "excess" and "caused by" Hammer

vexatiously and unreasonably multiplying proceedings. *Id.*

Here, Defendants argue improperly that these fees "relate to" Hammer's conduct – here, the specific argument is described more generally as "the broader context." Defendants allege that this category of fees "reflects" unspecified "challenges" in "attempting to schedule and take the deposition,"  creating the absolutely false impression that these billing entries were Defendants' responses to Hammer's attempting further delays (when in fact these entries seek to shift to Hammer the fees for ***Defendants'*** repeatedly seeking to delay the deposition each entry for this category of fees).  *See, supra.*

D-CT's Order [#360] (App'ts-App-0346) did not attempt a Section-1927 analysis of this category of fees, and instead makes the groundless conclusion that these fees were "because" of Hammer's delay.  *[#360]* (App'ts-App-0350).  D-CT does not address any element of Section-1927 other than using the phrase "because of" to reflect its conclusion without undertaking the proper analysis.

The award of this category of Section-1927 fees is clearly erroneous and must be reversed.

## C. D-CT's Striking Hammer's Surreply [#356] Was an Abuse of Discretion.

Hammer's Verified Surreply [#356]  (App'ts-App-0275) provided grounds

permitting its filing.  Defendants' Motion-to-Strike [#357] (App'ts-App-

0323) objected **and** responded (***not*** in the alternative), waiving the

objection.

D-CT [#360] struck the Surreply, ***and*** evaluated its merits. [#360]

(App'ts-App-0352 – 0353) (erroneously determining Defendants' Section-

1927 Reply [#355] (App'ts-App-0247) did ***not*** raise new arguments).  *[#360]*

(App'ts-App-0352).  For example only and without waiver in whole or in

part, D-CT incorrectly determined that Hammer's "only example [of new

material] is a claim that 'Lambs' Reply newly mischaracterized 10th-Cir

[sic] 'examples' of non-compensable fees."  *[#360]*  (App'ts-App-0352).

Hammer's actual words were "for example only." *[#356]*  (App'ts-App-

0308).

Hammer directly explained why portions were improperly new and

authorized response. *E.g., [#356]*  (App'ts-App-0311-0312).  Hammer also

relied on relevant law-of-the-case that had been applied to the benefit of

Defendants by D-CT. *[#356]*  (App'ts-App-0319 - 0320).  Regardless,

Defendants claimed no prejudice other than their moving to strike.

Because D-CT did purport to evaluate the Verified-Surreply, that filing

did become part of the record that is squarely available for *de novo* revieew

by this Court (App'ts-App-0346).

## CONCLUSION

D-CT's renewed Section-1927-Fees-Award [#360]  (App'ts-App-0346)

against Hammer was reversible legal error with the same or related flaws

identified by this Court's Order [#350] (App'ts-App-0212).

## STATEMENT REGARDING FEES

Appellants provide notice that they will seek fees for this appeal and

fully reserves the issue in whole and in part.

## STATEMENT CONCERNING ORAL ARGUMENT

This Court granted oral argument, which is scheduled for May 17,

2023 at 9:00 a.m. in Courtroom IV.  Thank you.  (Hammer had respectfully

requested oral argument.  By way merely of example and without limitation, these issues continue to involve decisions of credibility (even if only to determine how closely to examine the record) – live oral argument (whether in-person or remote) is well-known to provide the best means by which to gauge credibility.  These issues are uniquely, best served through the parties' addressing direct questions from the Court.)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this **APPELLANTS JOINT OPENING BRIEF** and all other aspects of this filing were served electronically on all counsel of record through the Court's CM/ECF system.

*s/ Karen A. Hammer*
_____ 04/14/2023

## CERTIFICATE RE TYPE-VOLUME LIMITATION

The original brief of record (*i.e.,* prior to updating citations to the Appendices per this Court's order), exclusive of items listed in Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), contained 12,995 words, using Adobe Font Source Serif Pro 14 point with at least one inch margins.  No new word

count has been conducted because the substantive content did not change

to the best of my knowledge and belief.

*s/ Karen A. Hammer*
_____      04/14/2023

### 1st CERTIFICATE OF COMPLIANCE WITH ECF USER MANUAL

All required privacy redactions have been made to this document and

those filed herewith.  Per order of this Court no hard copies were

submitted on this revised Opening Brief that updated citations to the Bates

stamping in the Appendix  and Supplemental Appendix.  Said digital

document has been scanned for viruses with Bitdefender Total Defender.

*s/ Karen A. Hammer*
_____      04/14/2023

**2nd CERTIFICATE OF COMPLIANCE WITH ECF USER MANUAL**

After being cleared for filing, the hard copies of the documents

submitted to the Court were exact copies of the version submitted

electronically on November 21, 2022, with the exception that the hard

copies had a cover sheet printed on blue paper as required by Fed. R. App.

P. 29(d).   This new version filed today is the same but for changing prior

references to docket numbers by adding references to Appellants'

Appendix and Appellants' Supplemental Appendix.

*s/ Karen A. Hammer*

_____           04/14/2023

# INDEX OF KEY ORDERS & FILINGS

*[#1] FDCPA-Complaint* ........................... 32

*[#18] Motion-to-Dismiss* .................... 33, 35

*[#182-1] Defendants'-Formal-Discovery-Requests* ................................................. 53

*[#295] Response-re-Summary-Judgment* . 14

*[#308] Law-of-Case-Order* ........... 12, 15, 23

*[#308] Summary-Judgment-Order* ........... 17

*[#338] Initial-Fees-Motion* ...................... 55

*[#344] Initial-Fees-Order* 12, 13, 16, 23, 38, 44, 62, 63, 64, 71

*[#350] Vacate-Remand-Order* ix, 11, 12, 13, 14, 16, 37, 38, 41, 44, 51, 57, 59, 62, 83

*[#353] 2nd-Renewed-Motion* 13, 15, 16, 19, 21, 36, 39, 41, 46, 50, 55, 64, 67, 69, 73, 75, 77

*[#353-3] Exhibit-3* ................................... 50

*[#353-4] Exhibit-4* ............................. 56, 58

*[#353-5] Hardy-Affidavit* ........ 19, 28, 29, 31

*[#354] Response-to-Renewed-Motion* 19, 20, 39, 40, 42, 46, 47, 51, 56, 63, 65, 72, 73, 74, 75, 78, 80

*[#355] Reply-to-Renewed-Motion* .... 13, 20, 21, 39, 43, 47, 51, 52, 53, 56, 57, 70, 74, 80, 82

*[#356] Verified-Surreply* . 13, 21, 24, 29, 30, 34, 56, 82, 83

*[#356-1] Insurance* ................................... 26

*[#357] Motion-to-Strike-&-Response-to-Surreply* .......................................... 26, 33

*[#358] Response to Strike-Motion* ........... 30

*[#359] Reply-for-Strike-Motion* ............... 27

*[#360] Renewed-Section-1927-Fees-Award* .. 12, 39, 40, 44, 48, 49, 53, 54, 58, 63, 65, 66, 69, 71, 72, 76, 81, 82, 83

*[#361] Notice-of-Appeal* .......................... 12

*[#53] Order-Denying-Dismissal* ............... 61

*[#53] Order-Denying-Dismissal* ......... 18, 35

*[#56] Answer* ............................... 18, 35, 53

*Appellee-Response-Brief* .......................... 15